UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Javelin Global Commodities (UK) Ltd., <br><br> Plaintiff, <br><br> v. <br><br> Investment Management Group LLC <br><br> Defendant | No. 2:25-cv-636 |

# COMPLAINT

Plaintiff Javelin Global Commodities (UK) Ltd., by and through its counsel, as and for its Complaint against Defendant Investment Management Group LLC, states as follows:

1. This matter arises out of an Indemnity and Security Agreement ("Indemnity Agreement") entered into between Defendant Investment Management Group LLC ("Investment Management") and Plaintiff Javelin Global Commodities (UK) Ltd. ("Javelin").

2. Under the terms of the Indemnity Agreement, Investment Management Group "agree[d] to pay and to indemnify and save [Javelin] harmless from all "Indemnity Obligation." Ex. A, ¶ 2(a). The term "Indemnity Obligation" means "any damage, loss, cost, expense (including attorneys' fees) or other liability incurred by Indemnitees arising from this Agreement, the Deed of Guarantee or the Master Lease Agreement." Ex. A, at 2. "Indemnitee" is defined as "Javelin, its agents, employees, directors, officers, professional advisors, affiliates, representatives, attorneys, auditors, professional consultants, equity holders, partners, controlling persons, trustees, investors, and each of their respective successors and assigns." *Id*.

3. As discussed in detail below, Investment Mining Group breached its obligations to Javelin under an equipment sublease and forbearance agreement. *See infra* ¶¶ 57-70. Javelin

1

terminated these agreements on August 20, 2021, and August 26, 2021, respectively. *See infra* ¶¶ 71-72; Exs. O & P.

4. On September 7, 2021, Javelin initiated a civil action against Investment Mining for its breach of the Equipment Sublease Agreement. *See Javelin Global Commodities (UK) Ltd. v. Investment Mining Group LLC*, No. 1:21-cv-7462 (S.D.N.Y.), Verified Complaint, ECF No. 3 (Sept. 7, 2021).

5. Investment Mining failed to appear and defend, the court granted Javelin's motion for default judgment. *See* Order, ECF No. 34 (Feb. 22, 2022). On February 14, 2025, the Clerk of the Court entered judgment. *See* Judgment, ECF No. 81 (Feb. 14, 2025). A true and correct copy of the Judgment is attached hereto as Exhibit P.

6. The Judgment, in relevant part, states:

> Judgment is entered for the principal amount of (i) $2,596,205 in unpaid rent, together with (ii) $189,915 in default interest on the unpaid rent accrued between August 13, 2021, and May 20, 2022, and (iii) additional default interest at a rate of 12% ($853.55 per day) from May 21, 2022, until the date on which the final judgment is entered, in the amount of $854,403.55.

*Id*.

7. As of the timing of this filing, Investment Mining has not satisfied the Judgment in full or in part.

8. Interest continues to accrue on the Judgment.

9. Through this action, Javelin seeks to enforce its rights against Investment Management under the Indemnity Agreement.

**Parties**

10. Plaintiff Javelin Global Commodities (UK) Ltd. ("Javelin") is a private limited company established under the laws of England and Wales.

11. Defendant Investment Management Group LLC is a West Virginia limited liability company with its principal place of business in West Virginia.

**Jurisdiction & Venue**

12. Javelin is a private limited company established under the laws of England and Wales. "UK private limited company is treated as a corporation for the purposes of diversity subject matter jurisdiction." *EMR (USA Holdings), Inc. v. Goldberg*, No. 18 Civ. 07849, 2019 WL 5537878, at *14 (Oct. 25, 2019); *SHLD, LLC v. Hall*, No. 15 Civ. 6225(LLS), 2015 WL 5772261, *2 (S.D.N.Y. Sept. 29, 2015) (unreported) (same) (citing *Century Metal Recycling, Pvt. Ltd. v. Dacon Logistics, LLC*, No. 3:13-cv-00093, 2013 WL 5929816, at *3 (D. Conn. Nov. 4, 2013). Thus, Javelin is a citizen of the United Kingdom for purposes of 28 U.S.C. § 1332. *See EMR (USA Holdings), Inc.*, 2019 WL 5537878, at *14. *See also SHLD, LLC*, 2015 WL 5772261, at *2 (unreported) ("An entity, although incorporated in a foreign country, with its principal place of business in the U.S. is deemed to be a citizen of both the foreign country and the U.S. state of its principal place of business.") (citations omitted).

13. Investment Management is a West Virginia limited liability company with its principal place of business in West Virginia.

14. Upon information and belief, based upon a good faith investigation, Ralph L. Ballard, III ("Mr. Ballard") is the sole member of Investment Management Group, LLC.

15. Mr. Ballard is a resident of Charleston, West Virginia.

16. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because (a) complete diversity of citizenship exists between Javelin UK and Investment Management; and (b) the amount in controversy exceeds $75,000, exclusive of costs, interest, and attorneys' fees.

17. This Court has personal jurisdiction over Investment Management because the Indemnity Agreement provides the following:

> Subject to the last two sentences of this subsection (b), Grantor and Javelin each irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind or description, whether in law or equity, whether in contract or in tort or otherwise, against the other party hereto or any of its Representative in any way relating to this Agreement or the transactions relating hereto or thereto, in any forum other than the United States District Court of the Western District of Pennsylvania, any state court of the Commonwealth of Pennsylvania located in Allegheny County and any appellate court from any thereof, and each of the parties hereto hereby irrevocably and unconditionally submits to the jurisdiction of such courts and agrees that all claims in respect of any such action, litigation or proceeding may be heard and determined in such Pennsylvania state court or, to the extent permitted by law, in such Federal court. Each of the parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing in this Agreement shall affect any right that Javelin may otherwise have to bring any action or proceeding (including an action or proceeding for injunctive relief) against Grantor or its properties and assets in the courts of any competent foreign jurisdiction to the extent necessary for, the exercise of, or preservation of, Javelin's rights or remedies under this Agreement.

Ex. A, ¶ 17(b).

18. Venue is proper in this Court because the Indemnity Agreement provides the following: "Each party to this Agreement hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement in any court referred to in subsection (b) of this Section 17. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court." Ex. A, ¶ 17(c).

## The Parties' Contracts & Agreements

*Indemnity and Security Agreement*

19. On March 1, 2019, Investment Management Group LLC ("Investment Management") and Javelin Global Commodities (UK) Ltd. ("Javelin") entered into the Indemnity & Security Agreement ("Indemnity Agreement"). A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit A**.

20. Investment Management is the "Grantor" under the Indemnity Agreement. Ex. A, at 1, 2.

21. "Indemnitee" is defined as "Javelin, its agents, employees, directors, officers, professional advisors, affiliates, representatives, attorneys, auditors, professional consultants, equity holders, partners, controlling persons, trustees, investors, and each of their respective successors and assigns." *Id*.

22. The term "Indemnity Obligation" means "any damage, loss, cost, expense (including attorneys' fees) or other liability incurred by Indemnitees arising from this Agreement, the Deed of Guarantee or the Master Lease Agreement." Ex. A, at 2.

23. Under the terms of the Indemnity Agreement, "Grantor [Investment Management] agrees to pay and to indemnify and save Indemnitee [Javelin] harmless from all Indemnity Obligations." Ex. A, ¶ 2(a).

24. The Indemnity Agreement specifically identifies Investment Mining Group LLC as an "*affiliate of Grantor* [Investment Management]." Ex. A, at 1 (emphasis added).

25. Investment Mining Group LLC is identified as the "Obligor" under the Indemnity Agreement. Ex. A, at 1.

26. Among the representations and warranties, Investment Management represented and warranted that the Indemnity Agreement "constitutes a legal, valid and binding obligation of Grantor thereto, enforceable against [Investment Mining] in accordance with its terms." Ex. A, § 3(c).

27. Under the Indemnity Agreement, "in addition to the right and remedies provided [under the Indemnity Agreement] or the Master Lease Agreement," Investment Management "shall pay Javelin all reasonable documented and expenses incurred by Javelin (including reasonable attorneys' fees and disbursements and court costs) in obtaining or liquidating the Collateral, in enforcing payment of the Secured Obligations, or in the prosecution or defense of any action or proceeding by or against Javelin or the Grantor concerning any matter arising out of or connected with this Agreement, any Collateral or the Secured Obligations." Ex. A, ¶ 6(a).

28. The Indemnity Agreement specifically provides:

**Costs, Expenses and Indemnity**. At all times hereafter, Grantor agrees to promptly pay upon demand any and all reasonable costs and expenses (including reasonable attorneys' fees and disbursements) of Javelin as necessary to exercise any rights or remedies under this Agreement or with respect to any of the Collateral. All of the foregoing costs and expenses shall constitute Secured Obligations hereunder.

Without limiting the indemnity contained in Section 2 hereof, Grantor shall indemnify and defend Javelin against, any and all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind, including reasonable attorneys' fees and the cost of enforcing any right to indemnification hereunder incurred or sustained by, or imposed upon, Javelin based upon, arising out of or, with respect to, or by reason of this Agreement, the transactions contemplated hereunder or any claim, request, accusation, allegation, assertion, complaint, petition, demand, suit, action, proceeding, and cause of action, commenced or threatened by any third party against Javelin.

Ex. A, ¶ 10.

29. On April 29, 2025, Javelin sent Investment Management, through counsel in *Javelin Global Commodities (UK) Ltd. v. Investment Mining Group LLC*, No. 1:21-cv-7462

(S.D.N.Y.), a prompt pay demand under section 14 of the Indemnity Agreement. This letter did not receive a response. Accordingly, on May 6, 2025, Javelin resent a copy of the letter via email to Mr. Ballard and to Jones & Associates who are specifically designated to receive notice in section 14 of the Indemnity Agreement. True and correct copies of the April 29 Letter and the May 6 Email are attached hereto as **Exhibit B**. Investment Management has not satisfied the Judgment.

30. On behalf of Investment Management, the Indemnity Agreement was signed by Ralph L. Ballard III, who identified himself as a "member" of Investment Management Group, LLC.

*Deed of Guarantee*

31. As noted above, the Indemnity Agreement defines "Indemnity Obligation" as "any damage, loss, cost, expense (including attorneys' fees) or other liability incurred by Indemnitees arising from this Agreement, the Deed of Guarantee or the Master Lease Agreement." Ex. A, at 2.

32. The Deed of Guarantee was entered into between Javelin Global Commodities (UK) Ltd., as "Guarantor," and Macquarie Corporate and Asset Funding Inc., a "Beneficiary." A true and correct copy of the Deed of Guarantee is attached hereto as **Exhibit C**.

33. As discussed below, Investment Mining Group leased certain piece of equipment listed on Schedules 1 through 4 of the Master Lease Agreement from Macquarie ("Macquarie Equipment"). In order to facilitate Investment Mining's lease of the Macquarie Equipment for the operation of the Point Lick Mine, in Charleston, West Virginia, on February 25, 2019, Javelin UK entered into the Deed of Guarantee in favor of Macquarie guaranteeing Investment Mining's payment and performance under the Master Equipment Lease.

34. Under the express terms of the Deed of Guarantee, Macquarie entered into the Master Lease Agreement with IMG "strictly on the condition" that Javelin UK agreed to guarantee the payment and performance of IMG's obligations under the Master Equipment Lease. *See* Ex. C, Recital B.

35. On March 6, 2019, Javelin filed a UCC Financing Statement to perfect its lien against all of Investment Mining's right, title and interest in the Macquarie Equipment. A true and correct copy of the UCC Financing Statement is attached hereto as **Exhibit D**.

*Master Lease Agreement*

36. On or about December 31, 2018, and continuing thereafter, Javelin related entities provided financing to Investment Mining and certain of its affiliates under a number of agreements for the purpose of providing capital for the development and operation of the Point Lick Mine. Under this arrangement, Investment Mining was to operate the mine and provide coal to Javelin under different contractual arrangements.

37. On February 25, 2019, in the wake of securing financing from these Javelin-related entities, Investment Mining entered into a Master Lease Agreement with Macquarie Corporate and Asset Funding, Inc. ("Macquarie"). A true and correct copy of the Master Lease Agreement, including Schedules 1 through 4, is attached hereto as **Exhibit E** (attached as Exhibit A to the Sublease Agreement).

38. The Master Lease Agreement defines Investment Mining as the "Lessee" and Macquarie as the "Lessor." Ex. E, Master Lease, at 1.

39. On behalf of Investment Mining, the Master Lease Agreement was signed by Ralph L. Ballard III, who identified himself as a "manager" of Investment Mining Group, LLC.

*Equipment Sublease Agreement*

40. Relatedly, Javelin and Investment Mining entered into a "Equipment Sublease Agreement" on October 15, 2020. A true and correct copy of the Equipment Sublease Agreement is attached hereto as **Exhibit E**.

41. Under the Equipment Sublease Agreement, the term "Equipment Lease" means the "Master Lease Agreement and Equipment Schedules 1 through 4." *See* Ex. E, Equipment Sublease, Recital A.

42. The Master Lease Agreement defines Investment Mining as the "Sublessee" and Javelin as the "Sublessor." Ex. E, Equipment Sublease, Recital A.

43. On behalf of Investment Management, the Equipment Sublease was signed by Ralph L. Ballard III, who identified himself as a "manager" of Investment Mining Group, LLC.

*Other Related Agreements*

44. On March 1, 2019, Ballard executed a Guaranty and Indemnity Agreement ("Ballard Personal Guaranty") in favor of and for the benefit of Javelin and its United States affiliate, Javelin Global Commodities (US) LP ("Javelin US"). A true and correct copy of the Ballard Personal Guaranty is attached hereto as **Exhibit F**.

45. Under the Ballard Personal Guaranty, Ralph Ballard personally guaranteed payment of all of Investment Mining's obligations under the Indemnity Agreement.

46. On behalf of Ralph L. Ballard, III, the Ballard Personal Guaranty was signed by Ralph L. Ballard III, who identified himself as a "Guarantor." Ex. F, at 19.

47. The Ballard Personal Guaranty was amended on October 28, 2019 ("Amended Ballard Personal Guaranty"). A true and correct copy of the Amended Ballard Personal Guaranty is attached hereto as **Exhibit G**.

48. On behalf of Ralph L. Ballard, III, the Amended Ballard Personal Guaranty was signed by Ralph L. Ballard III, who identified himself as a "Guarantor." Ex. G, at 4.

49. On October 28, 2019, Investment Management, Investment Leasing, LLC ("Investment Leasing"), Investment Mining, and Ralph L. Ballard, III entered into a Second Amended and Restated Loan and Security Agreement (as amended from time to time, the "Loan Agreement") with Javelin US pursuant to which the parties amended and restated the terms of their prior loan agreements providing financing for the Point Lick Mine. A true and correct copy of the Second Amended and Restated Loan and Security Agreement is attached hereto as **Exhibit H**.

50. On behalf of Investment Management, the Loan Agreement was signed by Ralph L. Ballard, III, who identified himself as a "manager" of Investment Management. Ex. H, at 37.

51. On behalf of Investment Leasing, the Loan Agreement was signed by Ralph L. Ballard, III, who identified himself as a "manager" of Investment Leasing. Ex. H, at 37.

52. On behalf of Investment Mining, the Loan Agreement was signed by Ralph L. Ballard, III, who identified himself as a "manager" of Investment Mining. Ex. H, at 37.

53. On behalf of Ralph L. Ballard, III, the Loan Agreement was signed by Ralph L. Ballard, III, who identified himself as a "personal guarantor." Ex. H, at 37.

54. On January 20, 2020, Investment Mining and Ralph Ballard entered into an Assignment and Assumption Agreement with Javelin ("Assignment and Assumption Agreement"). Under the Assignment and Assumption Agreement, Investment Mining assigned all of its rights, title and interest in the Master Equipment Lease to Javelin US, effective thirty days after the giving of notice by Javelin US to Investment Mining. A true and correct copy of the Assignment and Assumption Agreement is attached as **Exhibit I**.

55. On behalf of Investment Mining, the Loan Agreement was signed by Ralph L. Ballard, III, who identified himself as a "manager" of Investment Mining. Ex. I, at 5.

56. Investment Mining subsequently failed to make certain payments owed to Macquarie under the Master Equipment Lease totaling $385,910.76, and as a result, Javelin was required to make the missed payments directly to Macquarie itself under the terms of the Deed of Guarantee. Numerous events of default likewise occurred under the Loan Agreement on the part of IMG during the time period from the time of its execution on October 28, 2019, and such defaults continue to the present date.

57. On October 15, 2020, Javelin and Javelin US entered into a Forbearance Agreement with Investment Management, Investment Leasing, Investment Mining, and Ralph L. Ballard, III, Ballard Investments, Inc., and Sweet Grass Properties, LLC ("Forbearance Agreement"). A true and correct copy of the Forbearance Agreement is attached hereto as **Exhibit J**.

58. Under the Forbearance Agreement, Ralph Ballard is identified as a "Guarantor." Ex. J, at 1.

59. Under the Forbearance Agreement, Investment Management, Investment Leasing, Investment Mining, and Ralph L. Ballard, III are collectively referred to as "Obligors." Ex. J, at 1.

60. The Forbearance Agreement, in part, provides:

> I. The Obligors have incurred substantial indebtedness obligations to Javelin pursuant to certain agreements, as more fully described below. In total, the Obligors owe Javelin $12,552,654.49 of which the Guarantor personally guarantees $11,080,469.66. In summary, the debts comprise loan obligations of $12,166,743.73 and indemnity obligations in respect of certain payments under and the Master Lease Agreement of $385,910.76 to Macquarie Corporate and Asset Funding Inc. ("Macquarie").

11

II.     To the Effective Date, Javelin has provided financing and other support to the Obligors in accordance with the terms of certain commercial agreements. Javelin has alleged certain defaults by the Obligors and has proposed to take enforcement action and foreclose on the Collateral.

III.    Notwithstanding the foregoing, Javelin now desires to extend further support to the Obligors, subject to the terms and conditions of this Agreement. The support offered by Javelin comprises (i) forbearance in relation to certain indebtedness; (ii) reduction of certain indebtedness upon (A) Javelin's offset of the Override Deductions against such indebtedness; (B) Javelin's offset of any Stoker Override payments by Obligors to Javelin against such indebtedness; and (C) any applicable Market Based Debt Reduction or Enhanced Market Based Debt Reduction; (iii) waiver of interest due under Revolving Loan A and Revolving Loan B that would accrue from the Effective Date of this Agreement through June 30, 2021; (iv) waiver of interest due under Revolving Loan A and Revolving Loan B that would accrue for the years 2022 and/or 2023 if Javelin does not exercise its option in respect of the Option Quantities under the New Purchase and Sale Confirmation in respect of the relevant year; (v) payment of up to $600,000 of lease obligations to Macquarie (including any past due amounts) under the Master Lease Agreement, all $600,000 of which Obligors acknowledge Javelin paid in full as of or shortly after the Effective Date; and (vi) release from indemnity obligations in respect of the payments under the Master Lease Agreement referenced in clause (v) of this Paragraph III, in each case on the terms and conditions of this Agreement.

IV.     The forbearance and support described above does not extend to the exercise of Javelin's rights to take an assignment of the Master Lease Agreement, and it is acknowledged that Javelin shall deliver the relevant Effective Time Notice in accordance with the Assignment and Assumption Agreement contemporaneously with the execution of this Agreement. However, by way of further support to the Obligors, after the Master Lease Agreement is assigned to Javelin, Javelin shall enter into arrangements to sublease the relevant equipment to the Obligors for them to continue to use such equipment, under terms substantially similar to those of the Master Lease Agreement, provided that Javelin will hold a first priority lien on the sublease.

V.      In consideration for such support, the Obligors agree to (i) provide security to Javelin for outstanding obligations; (ii) make repayment of certain indebtedness; (iii) agree to Javelin's deduction of the Override from Javelin's purchases of coal from Borrower under the New Purchase and Sale Confirmation and the application of the Override by Javelin to reduce the indebtedness; (iv) pay Stoker Overrides (as defined below) in cash to Javelin; (v) agree to pay to Javelin the Collateral Sale Proceeds from sale of the Subordinated Priority Guarantor Collateral and the application of the Collateral Sale Proceeds by Javelin to reduce the indebtedness; (vi) agree to Javelin's deduction of the Equipment Rent Arrearage from Javelin's purchases of coal from Borrower under the New Purchase and Sale Confirmation and agree to repayment of the remaining balance of the Equipment

    Rent Arrearage pursuant to the terms set forth herein; and (vii) provide certain assurances, information and covenants set out in this Agreement.

    VI. With regard to future purchases of coal, the parties agree to (i) terminate that certain Amendment and Restatement of Purchase and Sale Confirmation between the Borrower and Javelin UK, dated January 2, 2020 (the "Purchase and Sale Confirmation"); (ii) enter into a new "Purchase and Sale Confirmation" in the form of Schedule C attached hereto (the "New Purchase and Sale Confirmation"); and (iii) enter into an Amended and Restated Master Coal Purchase Agreement in the form of Schedule D attached hereto (the "AR Master Coal Purchase Agreement").

    VII. In further consideration for the support to be provided by Javelin to Obligors pursuant to this Agreement, Guarantor shall grant to Javelin, and shall cause the Pledgors, Guarantor's affiliates, to grant Javelin the security interests specified herein with respect to certain real and personal property belonging to Guarantor and/or to Pledgors, and Pledgors, who will receive substantial benefit from the relief provided by Javelin pursuant to this Agreement, shall agree to grant such security interests to Javelin, all as set forth more specifically herein.

    VIII. This introduction is intended to provide a high-level description of the provisions of this Agreement only. It does not constitute a binding legal obligation, representation or warranty of any kind. The terms and conditions of this Agreement shall be construed independently of and without reference to this introduction.

Ex. J. at 1-2 (Introduction).

  61. In short, under the Forbearance Agreement, Javelin agreed to forbear from exercising its remedies arising from the defaults of Investment Mining and its affiliates under the Loan Agreement (Ex. G hereto), the Indemnity and Security Agreement (Ex. A hereto), the Ballard Personal Guaranty (Ex. F hereto), as amended (Ex. G hereto), and other commercial agreements among the parties, including without limitation, the right to foreclose on Javelin's lien on Investment Mining's interests in the Macquarie Equipment and to foreclose on liens on other collateral securing the indebtedness owed to Javelin, and provided other support to assist Investment Mining and its affiliates in meeting their payment obligations to Javelin.

  62. On November 1, 2020, in connection with the Forbearance Agreement, Investment Mining, Javelin, and Macquarie entered into a Transfer and Assumption Agreement

("Transfer Agreement"). A true and correct copy of the Transfer Agreement is attached hereto as **Exhibit K**. Under the Transfer Agreement, Investment Mining assigned its leasehold interest under the Master Lease Agreement (Ex. D hereto) to Javelin. Ex. K, ¶ 1.

63. Under this canopy, Javelin entered into the Equipment Sublease Agreement with Investment Mining for the purpose of subleasing the Macquarie Equipment back to Investment Mining for the purpose of Investment Mining operating the Point Lick Mine and supplying coal to Javelin. Ex. A.

*Defendants' Breach*

64. During the period from October 16, 2020 to August 30, 2021, Investment Mining failed to make a total of $1,584,769.90 in rent payments due under the Equipment Sublease Agreement, with Investment Minig's arrears continuing to accrue under the terms of the Sublease Agreement. Under the terms of the Equipment Sublease Agreement, lease payments under Schedules 1 through 4 came due between September 20, 2021 and June 19, 2023.

65. On May 10, 2021, and again on July 13, 2021, Javelin sent Investment Management and Investment Mining notices of default based on the non-payment of rent due under the Equipment Sublease Agreement, and demanded payment of the overdue rent ("Payment Default Notices"). True and correct copies of the May 10 and July 13 Payment Default Notices are attached hereto as **Exhibit L**.

66. On July 21, 2021, after conducting an inspection of the Macquarie Equipment, Macquarie sent Investment Mining Group a notice that it had failed to maintain certain items of the Macquarie Equipment in the condition required by the Master Equipment Lease and providing Investment Mining thirty (30) days to rectify the deficiencies ("Macquarie Equipment

Condition Notice"). A true and correct copy of the Macquarie Equipment Condition Notice is attached hereto as **Exhibit M**.

67. On August 12, 2021, Javelin sent Investment Mining a notice of default under the Equipment Sublease Agreement ("Notice of Default"). A true and correct copy of the Notice of Default is attached hereto as **Exhibit N**.

68. In the Notice of Default, Javelin advised that Investment Mining's failure to maintain the Macquarie Equipment in the condition required by the Master Lease Agreement constitutes a breach of Investment Mining's obligation in the Equipment Sublease Agreement to comply with each and every term and condition of the Master Lease Agreement. Ex. M, at 1 (citing Ex. A).

69. In the Notice of Default, Javelin further demanded that Investment Mining cure the deficiencies noted by Macquarie within twenty (20) business days of Investment Mining's receipt of such notice of default, failing which an Event of Default will occur under the Equipment Sublease Agreement. Ex. N, at 2.

70. In the Notice of Default, Javelin further advised Investment Mining that its failure to timely cure the payment defaults under the Equipment Sublease Agreement constitutes an Event of Default under the Equipment Sublease Agreement, with respect to which Javelin reserves all rights and remedies.

71. On August 20, 2021, with the ripening of Investment Mining's breach, Javelin sent Investment Mining notice expressly terminating the Equipment Sublease Agreement ("Sublease Termination Letter"). A true and correct copy of the Sublease Termination Letter is attached hereto as **Exhibit O**.

72. On August 26, 2021, Javelin and Javelin US sent Investment Mining a letter terminating the Forbearance Agreement based on an event of default under the Equipment Sublease Agreement ("Forbearance Agreement Termination Letter"). A true and correct copy of the Forbearance Agreement Termination Letter is attached hereto as **Exhibit P**.

73. On September 7, 2021, Javelin filed a civil action against Investment Mining for its breach of the Equipment Sublease Agreement. *See Javelin Global Commodities (UK) Ltd. v. Investment Mining Group LLC*, No. 1:21-cv-7462 (S.D.N.Y.), Verified Complaint, ECF No. 3 (Sept. 7, 2021).

74. After Investment Mining failed to appear and defend, the court granted Javelin's motion for default judgment. *See* Order, ECF No. 34 (Feb. 22, 2022). The court subsequently entered an order granting injunctive relief against the Macquarie Equipment. *See* Order, ECF No. 42 (Apr. 28, 2022).

75. Upon inquest, the Magistrate Judge issued an Report & Recommendation recommending "Javelin be awarded a judgment on its breach of contract claim in the amount of (i) $2,596,205 in unpaid rent, (ii) $189,915 in default interest on the unpaid rent accrued between August 13, 2021, and May 20, 2022, and (iii) additional default interest at a rate of 12% ($853.55 per day) from May 21, 2022, until the date on which the final judgment is entered." *See* R&R to the Hon. Denise L. Cote, ECF No. 69 (Dec. 30, 2024).

76. On February 13, 2025, the court issued an Opinion & Order adopting the Report & Recommendation. *See* Opinion & Order, ECF No. 80 (Feb. 13, 2025). Specifically, the court stated:

> The December 30 Report is adopted in full. The Clerk of Court shall enter judgment for the principal amount of (i) $2,596,205 in unpaid rent, together with (ii) $189,915 in default interest on the unpaid rent accrued between August 13, 2021, and May 20,

2022, and (iii) additional default interest at a rate of 12% ($853.55 per day) from May 21, 2022, until the date on which the final judgment is entered.

*Id*.

77. On February 14, 2025, the Clerk of the Court entered judgment. *See* Judgment, ECF No. 81 (Feb. 14, 2025). A true and correct copy of the Judgment is attached hereto as **Exhibit Q**.

78. Interest continues to accrue on the Judgment.

79. In post-judgment discovery, Investment Mining stated in sworn interrogatories that "**no affiliates**, subsidiaries or parent companies claim an interest in IMG [Investment Mining]" and that "IMG [Investment Mining] is ***a stand-alone company and is owned solely by Ralph Ballard***." Interrogatory No. 15 (emphasis added).

80. As of the timing of this filing, Investment Mining has not satisfied the Judgment in full or in part.

### Count I: Breach of Contract:
### Indemnity & Security Agreement

81. Plaintiff Javelin incorporates by reference the facts alleged in paragraphs 1-80 above as if fully set forth herein.

82. Javelin UK and Investment Management entered into Indemnity Agreement on March 1, 2019.

83. The Indemnity Agreement was signed by Ralph L. Ballard III, who identified himself as a "member" of Investment Management Group, LLC.

84. The Indemnity Agreement expressly provides that "[t]his Agreement constitutes a legal, valid and binding obligation of Grantor [Investment Management] in accordance with its terms." Ex. A, ¶ 3(c).

85. Javelin has at all times fully and properly performed its contractual obligations under the Indemnity Agreement and the related agreements described herein. All conditions precedent have been performed by Javelin or have otherwise occurred to establish Javelin's right to recover all amount claimed herein, plus any additional amounts that accrue under the Indemnity Agreement during the pendency of this matter.

86. On September 7, 2021, Javelin commenced a civil action against Investment Mining for its breach of the Equipment Sublease Agreement. *See Javelin Global Commodities (UK) Ltd. v. Investment Mining Group LLC*, No. 1:21-cv-7462 (S.D.N.Y.), Verified Complaint, ECF No. 3 (Sept. 7, 2021).

87. On February 14, 2025, upon Investment Mining's default and after inquest, the Clerk of the Court entered judgment. *See* Judgment, ECF No. 81 (Feb. 14, 2025). The Judgment, in relevant part, states:

> Judgment is entered for the principal amount of (i) $2,596,205 in unpaid rent, together with (ii) $189,915 in default interest on the unpaid rent accrued between August 13, 2021, and May 20, 2022, and (iii) additional default interest at a rate of 12% ($853.55 per day) from May 21, 2022, until the date on which the final judgment is entered, in the amount of $854,403.55.

Ex. P.

88. Under the Indemnity Agreement, Investment Management has indemnified Javelin for Investment Mining breaches of, *inter alia*, the Equipment Sublease Agreement and the Master Lease Agreement.

89. As a direct and proximate result of Investment Mining's breach, Javelin has incurred and continues to incur damages.

90. As of the timing of this filing, Investment Mining has not satisfied the Judgment in full or in part.

91. Interest continues to accrue on the Judgment.

**WHEREFORE**, Javelin prays that this Court enter judgment against Investment Management:

(a) in the amount of $2,786,120; plus

(b) additional default interest at a rate of 12% ($853.55 per day) from May 21, 2022, until the date on which the final judgment is entered, as Javelin is entitled to under the Judgment; plus

(c) "any damage, loss, cost, expense (including attorneys' fees) or other liability incurred by Indemnitees [Javelin and Javelin US] arising from this Agreement, the Deed of Guarantee or the Master Lease Agreement," as expressly permitted under the Indemnity Agreement, including any cost and expense (including attorneys' fees) accrued in this matter or previously accrued in *Javelin Global Commodities (UK) Ltd. v. Investment Mining Group LLC*, No. 1:21-cv-7462 (S.D.N.Y.); plus

(d) any other damages the Court seems to be fair and equitable.

Respectfully submitted,

**Dated**: May 8, 2025

/s/ *Michael P. Robb*
Michael P. Robb, Esq. (PA ID No.: 85201)
Timothy C. Leckenby, Esq. (PA ID No.: 332707)
BAILEY & GLASSER LLP
180 Swinderman Road, Suite 100
Wexford, PA 15090
mrobb@baileyglasser.com
tleckenby@baileyglasser.com
T: (412) 430-0391
F: (412) 259-0115

Michael L. Murphy, Esq.*
BAILEY & GLASSER LLP
1055 Thomas Jefferson Street, NW
Suite 540
Washington, DC 20007
T: (202) 463-2101
F: (202) 463-2103
mmurphy@baileyglasser.com

* seeking admission pro hac vice